[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 31, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-14462

_____

D. C. Docket No. 03-03486-CV-ODE-1

LEE CALEY,
WILLIAM ETZEL,
STANLEY WALKER, and all
persons similarly situated,

Plaintiffs-Appellants,

versus

GULFSTREAM AEROSPACE CORPORATION,
GENERAL DYNAMICS CORPORATION,

Defendants-Appellees.

_____

No. 04-14463

_____

D. C. Docket No. 03-03487-CV-ODE-1

DIANNE JACKSON,
MARLON GREENE,
ROBERT VOUK,
WILLIE MAE STEWART, and all
persons similarly situated,

Plaintiffs-Appellants,

versus

GULFSTREAM AEROSPACE CORPORATION,
GENERAL DYNAMICS CORPORATION,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____
(October 31, 2005)


Before BIRCH, HULL and BOWMAN[*], Circuit Judges.

HULL, Circuit Judge:

The plaintiffs-appellants ("plaintiffs") in this case are employees and former

employees of defendant Gulfstream Aerospace Corporation ("Gulfstream"), which

adopted a dispute resolution policy (the "DRP") during the plaintiffs' employment.

_____

[*]Honorable Pasco M. Bowman, II, United States Circuit Judge for the Eighth Circuit,
sitting by designation.

2

The plaintiffs subsequently filed two law suits against Gulfstream alleging various discrimination and other claims under the Age Discrimination in Employment Act ("ADEA"), the Fair Labor Standards Act ("FLSA"), the Employee Retirement Income Security Act ("ERISA"), and Title VII. The district court granted the defendants' motions to compel arbitration of the plaintiffs' claims and to dismiss pursuant to the DRP. On appeal, the plaintiffs argue that Gulfstream's DRP is unenforceable. After review and oral argument, we affirm.

## I. BACKGROUND

### A. Dispute Resolution Policy

Each of the plaintiffs is a current or former employee of Gulfstream and was employed at Gulfstream's Savannah, Georgia, facility during the relevant period from the summer of 2002 until the spring of 2003. During the summer of 2002, Gulfstream adopted the DRP to serve as its exclusive method for resolving covered employment-related disputes between itself and its employees.

On or about July 15, 2002, Gulfstream mailed to all of the workers employed at its Savannah facility a copy of the DRP, an explanatory cover letter, and a question-and-answer form. An outside company mailed the documents by first-class mail to the employee addresses on file with Gulfstream's human

3

resources department.[1]  In addition, Gulfstream placed the DRP and accompanying documents on the company intranet accessible by the plaintiffs.  Gulfstream also distributed the DRP electronically through the Management Newsletter emailed to approximately 1,000 employees.  Gulfstream also posted notices relating to the DRP's implementation, but not the DRP itself, on thirteen bulletin boards throughout the Savannah facility.

The explanatory cover letter, mailed with the DRP on July 15, 2002, read in part as follows: "The DRP will become the exclusive procedure to resolve covered workplace disputes – so you should carefully read the enclosed brochure.  This policy, which will become effective on August 1, 2002, will be a <u>condition of continued employment</u>.  All covered claims will be subject to this DRP at that time."  (Emphasis added.)

In addition, the DRP itself included the following clause explaining that the DRP was a contract and that an employee's continuation of employment constituted acceptance:

> **Acceptance/No Change in Terms of Employment**
> The submission of an application, acceptance of employment or the

---

[1]The district court found that each of the plaintiffs had sufficient notice of the DRP.  On appeal, the plaintiffs note that no return-receipt was required and suggest that Gulfstream tried to minimize attention to the DRP. However, they do not challenge the district court's conclusion that each of the plaintiffs had sufficient notice of the DRP.  Rather, as outlined later, they argue that the DRP is unenforceable for various other reasons.

continuation of employment by an individual shall be deemed to be acceptance of the DRP. No signature shall be required for the policy to be applicable. The mutual obligations set forth in this DRP shall constitute a contract between the Employee and the Company but shall not change an Employee's at-will relationship or any term of any other contract or agreement between the Company and Employee. This Policy shall constitute the entire agreement between the Employee and Company for the resolution of Covered Claims.

The DRP established a four-level dispute-resolution process, as follows: Level One: Human Resources Review; Level Two: Management Panel Review; Level Three: Mediation; Level Four: Arbitration. The DRP explained how each level would work and set forth specific discovery rules.

The DRP also contained a time-based waiver applicable to employees. Specifically, the DRP provided that an employee's failure to submit a covered claim to the next level within thirty days of the final determination at a given level would waive the employee's rights to pursue the covered claim. While an employee was required to proceed through each level sequentially, the DRP specified that Gulfstream "may elect to bypass one or more steps prior to arbitration for disputes with applicants for employment, with former employees, or if the Company is the initiating party." In addition, no time-based waiver applied to Gulfstream under the DRP.

The DRP defined "covered claims" as "employment-related claims . . . of a legal right, obligation or entitlement regarding or arising from the employment

5

relationship." The DRP further provided that Covered Claims include, but are not limited to, the following:

1. Claims relating to involuntary terminations, such as layoffs and discharges (including constructive discharges);
2. Employment discrimination and harassment claims, based on, for example, age, race, sex, religion, national origin, veteran status, citizenship, disability or other characteristic protected by law; Retaliation claims for legally protected activity, and/or for whistleblowing;
3. Claims relating to state or federal Family and Medical Leave Acts;
4. Claims relating to workplace accommodation due to physical or mental disabilities;
5. Tort claims, intentional torts, negligence, defamation, invasion of privacy, infliction or [sic] emotional distress, etc.;
6. Claims of violation of public policy;
7. Claims based on express or implied contracts; and

The DRP specifically excluded the following claims from its provisions:

Excluded Claims
Claims excluded from the DRP are the following:
1. Claims for benefits under a Company benefit plan, including those covered by Retirement Income Security Act of 1974 (ERISA);
2. Claims for workers' compensation, violations of specific safety requirements or unemployment compensation benefits;
3. Claims involving patents or inventions;
4. Claims covered under the National Labor Relations Act;
5. Claims against the Company or a present or former Employee which do not have any relationship to the Employee's work or relationship to the Company;
6. Claims which are personal in nature and do not involve a claim of a legal right, obligation or entitlement.

The DRP further provided that for certain limited claims, either the

6

employee or Gulfstream "may . . . apply to any court of competent jurisdiction and seek interim provisional, injunctive, or other equitable relief until the arbitration award is rendered or the Covered Claim is otherwise resolved."[2]  None of the claims in this case falls within this provision.

The DRP explicitly provided that it was "the sole and exclusive forum and remedy for all Covered Claims."  It further provided that the employee and Gulfstream waived any right to jury trial, as follows: "The Employee and Company agree and hereby waive any right to jury trial for any Covered Claim."

Finally, the DRP provided that Gulfstream retained the right to modify or terminate the DRP on thirty days' written notice and that the policy in effect at the time a claim was received would govern the process by which the claim was determined.

In March 2003, Gulfstream modified certain terms of the DRP and noticed and distributed it by the same methods as the original version.  The terms of the modified DRP were substantially similar.  However, the revised DRP provided that the employee agreed that no "Covered Claim" may be brought as a class or

---

[2]This provision applied only to "claims involving alleged breach of Employee's non-competition, non-solicitation, fiduciary, or confidentiality obligations, as well as claims involving trademarks, trade secrets, business know-how or intellectual property."

collective action under the DRP.[3] The revised DRP also stated that the employee's continued employment would constitute acceptance. The effective date of the modification was April 10, 2003, and each of the plaintiffs was employed when notice of the modification to the DRP was given and on the effective date.

## B. Plaintiffs' Lawsuits

On November 17, 2003, the plaintiffs filed two related complaints seeking damages and equitable relief from defendants Gulfstream and its parent company, General Dynamics Corporation ("General Dynamics"). In Caley, et al. v. Gulfstream Aerospace Corp. and General Dynamics Corp., the plaintiffs' complaint asserted claims on behalf of an estimated class of two hundred workers under the FLSA, charging that the defendants deliberately mischaracterized the plaintiffs as exempt from overtime pay requirements and therefore failed to pay the plaintiffs for hours worked in excess of forty per week. The same counsel filed the complaint in Jackson, et al. v. Gulfstream Aerospace Corp. and General Dynamics Corp. on behalf of an estimated class of one hundred workers, charging the same defendants with ADEA and ERISA violations, asserting other Georgia-law contract claims, and alleging individual claims of race discrimination, a retaliation claim, and a gender discrimination claim under Title VII and an FLSA retaliation

---

[3]The revised DRP also added to the list of Covered Claims "Claims relating to wages, hours, overtime, or other wage payment issues."

claim on behalf of certain plaintiffs.[4]

In response to the complaints, the defendants filed motions to compel arbitration and to dismiss both actions. On March 10, 2004, General Dynamics (later joined by Gulfstream) moved to treat the Caley and Jackson actions as related. The motion was granted on March 26, 2004.

On August 24, 2004, the district court entered an order granting the defendants' motions to compel arbitration and to dismiss.[5]

The plaintiffs now appeal. This appeal concerns the validity of Gulfstream's DRP, which includes a requirement to arbitrate certain types of employment-related claims, including those asserted by the plaintiffs in these cases.

## II. DISCUSSION

### A. Federal Arbitration Act

The validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), which was enacted in 1925 to reverse the longstanding judicial hostility toward arbitration. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27, 105 S. Ct. 3346, 3354 (1985); Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir.

---

[4]The named plaintiffs in the Jackson case were terminated on April 11, 2003.

[5]The district court denied as moot other pending motions, including the plaintiffs' motions to compel discovery, plaintiffs' motions for partial summary judgment, and defendants' motions to strike or stay the plaintiffs' motions for partial summary judgment.

2002).  The FAA "embodies a 'liberal federal policy favoring arbitration agreements.'"  Hill v. Rent-A-Center, Inc., 398 F.3d 1286, 1288 (11th Cir. 2005) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983)).  The purpose of the FAA was "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation."  Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1440 (11th Cir. 1998) (quotation marks, brackets, and citation omitted).

The FAA generally provides for the enforceability of "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2.  The United States Supreme Court has clarified that the FAA generally applies to contracts of employment except those involving "transportation workers."  Circuit City v. Adams, 532 U.S. 105, 119, 121 S. Ct. 1302, 1311 (2001); Hill, 398 F.3d at 1289.  Further, "courts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA."  Weeks, 291 F.3d at 1313; see Circuit City, 532 U.S. at 123, 121 S. Ct. at 1313; Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 1652 (1991); Mitsubishi Motors, 473 U.S. at 628, 105 S. Ct. at 3354; Bender v. A.G. Edwards & Sons, Inc., 971 F.2d 698, 700 (11th Cir. 1992).  Indeed, compulsory arbitration

10

agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes. See Weeks, 291 F.3d at 1313-14.

Furthermore, under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract." 9 U.S.C. § 2. The FAA preempts state law to the extent it treats arbitration agreements differently than other contracts. Circuit City, 532 U.S. at 112, 121 S. Ct. at 1307 (stating that the FAA is "pre-emptive of state laws hostile to arbitration"). The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts. However, state law generally governs whether an enforceable contract or agreement to arbitrate exists. See Perry v. Thomas, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520, 2527 n.9 (1987) ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."). Thus, in determining whether a binding agreement arose between the parties, courts apply the contract law of the particular state that governs the formation of contracts. The "federal policy favoring arbitration, however, is taken into consideration even in applying ordinary state law." Cooper

11

v. MRM Inv. Co., 367 F.3d 493, 498 (6th Cir. 2004) (quotation marks and citation omitted).

On appeal, the plaintiffs make numerous arguments that the arbitration provision in the DRP is not a binding agreement or is unenforceable under either the FAA, federal statutory and constitutional law, or Georgia law. We address each of those claims in turn.[6]

## B. "Written Agreement" Requirement in the FAA

The plaintiffs first argue that the DRP is not an "agreement in writing" for purposes of FAA enforcement because it is not signed by both parties. We reject this argument because while the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties.

We begin with § 2 of the FAA, which provides that "[a] written provision" to arbitrate shall be enforceable, as follows:

> A <u>written provision in</u> any maritime transaction or <u>a contract</u> evidencing a transaction involving commerce <u>to settle by arbitration a controversy</u> thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, <u>shall be valid, irrevocable, and enforceable</u>, save upon such grounds as exist at law or in equity

---

[6]"We review <u>de novo</u> the district court's order to compel arbitration." <u>Bautista v. Star Cruises</u>, 396 F.3d 1289, 1294 (11th Cir.) (citations omitted), <u>cert. dismissed</u>, 125 S. Ct. 2954 (2005).

for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Similarly, the FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding "is referable to arbitration under an <u>agreement in writing</u> for such arbitration," 9 U.S.C. § 3 (emphasis added),[7] and provide for a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a <u>written agreement</u> for arbitration" to petition a district court for an order directing that arbitration proceed, 9 U.S.C. § 4 (emphasis added).[8] The FAA thus uses the statutory language of "[a] written provision" in a contract, "agreement in writing," and "written agreement," which

---

[7]Section 3 provides in full as follows:
**Stay of proceedings where issue therein referable to arbitration**
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default with such arbitration.
9 U.S.C. § 3.

[8]Section 4 provides, in relevant part, as follows:
A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . .
9 U.S.C. § 4.

13

we collectively refer to as the "written agreement" requirement.[9]

We readily conclude that no signature is needed to satisfy the FAA's written agreement requirement. First, the plain language of § 2 requires that the arbitration provision be "written." It does not, however, require that the agreement to arbitrate be signed by either party; nor does any other provision of the FAA. As the Tenth Circuit has explained, "Decisions under the Federal Arbitration Act . . . have held it not necessary that there be a simple integrated writing or that a party sign the writing containing the arbitration clause. All that is required is that the arbitration provision be in writing." Medical Dev. Corp. v. Indus. Molding Corp., 479 F.2d 345, 348 (10th Cir. 1973) (citations omitted); see also Durkin v. Cigna Property & Cas. Corp., 942 F.Supp. 481, 487 (D. Kan. 1996) ("The contract need not be written; rather, for arbitration of future disputes, section 2 requires '[a] written provision' in 'a contract.'").

Second, the overwhelming weight of authority supports the view that no signature is required to meet the FAA's "written" requirement. See, e.g., Med. Dev. Corp., 479 F.2d at 348; David L. Threlkeld & Co. v. Metallgesellschaft Ltd., 923 F.2d 245, 250 (2d Cir. 1991) (holding that Vermont statute requiring that

---

[9]The meaning of this statutory language in the FAA involves interpretation of a federal statute and thus is a question of federal law. We thus reject the plaintiffs' argument that Georgia law governs this issue.

14

arbitration agreement be signed was preempted by the FAA); Genesco, Inc. v. Kakiuchi & Co., 815 F.2d 840, 846 (2d Cir. 1987) (stating that "while the [FAA] requires a writing, it does not require that the writing be signed by the parties"); Valero Ref., Inc. v. M/T Lauberhorn, 813 F.2d 60, 62 (5th Cir. 1987) ("It is established that a party may be bound by an agreement to arbitrate even in the absence of his signature."); Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navegacion, C.A., 169 F.Supp. 2d 1341, 1346 (M.D. Fla. 2001) ("While an agreement to arbitrate must be in writing, there is no requirement that the writing be signed."); Todd Habermann Constr., Inc. v. Epstein, 70 F.Supp. 2d 1170, 1174-75 (D. Colo. 1999) (same); see also Tinder v. Pinkerton Sec., 305 F.3d 728 (7th Cir. 2002) (enforcing arbitration agreement unilaterally promulgated by employer even though employee never signed it without discussing "written agreement" requirement); May v. Higbee Co., 372 F.3d 757, 764 (5th Cir. 2004) (same). Indeed, this Court has found no decision to the contrary.

Here, the DRP is indisputably in writing. Although the employees' acceptance was by continuing their employment and was not in writing, all material terms – including the manner of acceptance – were set forth in the written DRP. The DRP stated that it was a contract and constituted the entire agreement

15

between the employee and Gulfstream as to covered claims.[10]  Nothing in the FAA

suggests that a "written provision" must be signed to be enforceable.  Accordingly,

we conclude that the DRP is a written agreement to arbitrate for purposes of the

FAA.

## C.  Commerce Nexus

The plaintiffs next argue that the FAA does not apply because the

underlying employment relationship does not affect commerce.  This argument

also lacks merit.

Enacted pursuant to the Commerce Clause, the FAA applies only to a

contract "evidencing a transaction involving [interstate] commerce."  9 U.S.C. § 2;

Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 874 (11th Cir.

2005), petition for cert. filed, 74 USLW 3162 (Sept. 12, 2005) (No. 05-347).  "The

Supreme Court has interpreted the term 'involving commerce' in the FAA as the

functional equivalent of the more familiar term 'affecting commerce' – words of

art that ordinarily signal the broadest permissible exercise of Congress' Commerce

Clause power."  Jenkins, 400 F.3d at 874.  The Supreme Court also has clarified

that "Congress' Commerce Clause power may be exercised in individual cases

---

[10]Whether continued employment can constitute acceptance of a contractual offer, and thus whether the DRP is a binding contract, is a different contract issue to be decided under state law.  As discussed in greater detail below, contracts generally can be accepted by performance under Georgia law and general contract principles.

16

without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control." Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56-57, 123 S. Ct. 2037, 2040 (2003) (quotation marks, ellipsis, and citation omitted).

Because Gulfstream's overall employment practices affect commerce, the Commerce Clause requirement is satisfied. See Weeks, 291 F.3d at 1314 (noting that "the Supreme Court in Circuit City . . . held that the FAA was applicable to all contracts of employment except those contracts involving transportation workers").[11]

Having concluded that the DRP satisfies the FAA's requirements of a written agreement to arbitrate and of a contract involving commerce, we now must determine if it is otherwise enforceable.

**D. Waiver of trial rights**

The plaintiffs alternatively argue that the DRP and their continued

_____

[11]The plaintiffs also argue that the DRP is not an agreement to settle disputes "by arbitration" because it sets forth three steps prior to actual arbitration, and thus that it is not enforceable under the FAA. The plaintiffs cite no case suggesting that the DRP's 4-step process makes it any less an agreement to arbitrate, and the plaintiffs' argument on this issue is not well taken. Nothing in the FAA prescribes a particular arbitration procedure or prohibits a requirement that various steps be taken before arbitration is required. See, e.g., Cooper, 367 F.3d at 497-508 (enforcing arbitration agreement that required internal review prior to submission of claims to arbitration). Rather, the FAA requires enforcement of a wide range of arbitration agreements and leaves to the parties the discretion to craft an appropriate arbitration procedure.

17

employment under the DRP are ineffective to waive their Seventh Amendment and

statutory trial rights, such as access to the courts and the right to a jury trial. They

argue that because the DRP states that the employee "waive[s] any right to a jury

trial," that waiver in the DRP is subject to heightened "knowing and voluntary"

standard in evaluating the enforcement of their waiver under federal law.[12]

For numerous reasons, we reject plaintiffs' contention and conclude that the

DRP's agreement to arbitrate and waiver of jury trial rights are governed by

contract principles and are not subject to the heightened knowing and voluntary

standard argued by plaintiffs. First, arbitration contracts covered by the FAA,

including the DRP here, are "valid, irrevocable, and enforceable," save upon such

grounds as exist at law and in equity for revocation of contracts. 9 U.S.C. § 2. As

the Supreme Court has recognized, a court can decline to enforce an arbitration

---

[12]More specifically, the plaintiffs argue that a "totality of the circumstances" analysis is required under federal law to determine if the waiver of trial rights in the circulated DRP is knowing and voluntary. See, e.g., Bledsoe v. Palm Beach County, 133 F.3d 816 (11th Cir. 1998); Puentes v. UPS, 86 F.3d 196 (11th Cir. 1996); Griffin v. Kraft General Foods, 62 F.3d 368 (11th Cir. 1995). The plaintiffs assert that the relevant circumstances would include: (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff considered the agreement before signing it; (3) the clarity of the agreement; (4) the plaintiff's opportunity to consult with an attorney; (5) the employer's encouragement or discouragement of consultation with an attorney; (6) the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled; and (7) the relative bargaining power of the parties. D.H. Overmeyer Co. v. Frick, 405 U.S. 174, 92 S. Ct. 775, 782-83 (1972); Puentes, 86 F.3d at 198. By "knowing" and "voluntary" under the totality of the circumstances, plaintiffs mean much more than a general understanding that a binding agreement or contract is being entered into.

18

agreement under the FAA only if the plaintiffs can point to a generally applicable principle of <u>contract</u> law under which the agreement could be revoked. <u>See</u> <u>Mitsubishi Motors</u>, 473 U.S. at 627, 105 S. Ct. at 3354. Thus, arbitration agreements under the FAA are enforceable absent fraud, duress, or some other misconduct or wrongful act recognized by the law of contracts for revocation of a contract.

Second, as the Supreme Court has recognized, a party agreeing to arbitration does not waive any substantive statutory rights; rather, the party simply agrees to submit those rights to an arbitral forum. <u>See</u> <u>id.</u> at 628, 105 S. Ct. at 3354 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."); <u>Circuit City</u>, 532 U.S. at 123, 121 S. Ct. at 1313 ("The Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law; as we noted in <u>Gilmer</u>, . . . by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.").

Third, as the Fifth Circuit has noted, "[t]he Seventh Amendment does not

19

confer the right to a trial, but only the right to have a jury hear the case <u>once it is</u> <u>determined that the litigation should proceed before a court</u>. If the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." <u>American Heritage Life Ins. Co. v. Orr</u>, 294 F.3d 702, 711 (5th Cir. 2002) (emphasis added); <u>see also</u> <u>Sydnor v. Conseco Fin. Servs. Corp.</u>, 252 F.3d 302, 307 (4th Cir. 2001) ("the right to a jury trial attaches in the context of judicial proceedings <u>after it is determined that litigation should proceed before a</u> <u>court</u>. Thus, the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." (quotation marks and citation omitted) (emphasis added)); <u>Koveleskie v. SBC Capital Mkts., Inc.</u>, 167 F.3d 361, 368 (7th Cir. 1999) ("[W]e are satisfied, as was the Court in <u>Gilmer</u>, that the arbitral forum adequately protects an employee's statutory rights, both substantively and procedurally."); <u>Seus v. John Nuveen & Co.</u>, 146 F.3d 175, 183-84 (3d Cir. 1998) (holding that applying a heightened knowing-and-voluntary standard to arbitration agreements would be inconsistent with the FAA and <u>Gilmer</u>), <u>abrogated on other</u> <u>grounds</u>, <u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595 (3d Cir. 2002). Thus, where a party enters into a valid agreement to arbitrate, the party is not entitled to a jury trial or to a judicial forum for covered disputes.

Further, as noted earlier, the FAA's plain language is clear that arbitration

agreements are enforceable except for state-law grounds for ordinary revocation. 9 U.S.C. § 2. In keeping with this language, this Court has previously applied a standard contract analysis, rather than a heightened "knowing and voluntary" standard, in evaluating the enforceability of an arbitration agreement. Specifically, this Court has explained that "[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. Thus, unless Congress has clearly expressed an intention to preclude arbitration of the statutory claim, a party is bound by its agreement to arbitrate." Davis v. S. Energy Homes, Inc., 305 F.3d 1268, 1273 (11th Cir. 2002) (quotation marks and citations omitted)); see also Weeks, 291 F.3d at 1313 (noting that "[c]ourts have consistently found that claims arising under federal statutes may be the subject of arbitration agreements and are enforceable under the FAA").

We thus conclude that general contract principles govern the enforceability of arbitration agreements and that no heightened "knowing and voluntary" standard applies, even where the covered claims include federal statutory claims generally involving a jury trial right.[13] Our conclusion is consistent with the

_____

[13]We note that Gulfstream's DRP expressly stated that the employee and Gulfstream both waived the right to a jury trial regarding covered claims and explained in detail the mandatory dispute resolution process. Further, even without that express statement, "the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate." Sydnor,

21

decisions of many of our sister circuits. See American Heritage Life Ins., 294 F.3d at 711 (holding that parties' arbitration agreement, which stated that the right to a trial and to a jury were waived, validly waived those trial rights, and rejecting arguments that a heightened "clear and unmistakable" or "voluntary, knowing, and intelligent" standard applied to the waiver); Sydnor, 252 F.3d at 307 (holding that "the right to a jury trial attaches in the context of judicial proceedings after it is determined that litigation should proceed before a court," and the fact that the parties agreed to waive their right to a jury trial did not require the court to evaluate the arbitration agreement under a more demanding standard); Koveleskie, 167 F.3d at 368 (evaluating arbitration agreement under general contract principles and rejecting Seventh- and Fifth-Amendment waiver arguments because there was no constitutional right to a jury trial for claims subject to the arbitration clause and the arbitral forum adequately protects an employee's substantive and procedural statutory rights); Seus, 146 F.3d at 183-84 (holding that applying a heightened knowing-and-voluntary standard to arbitration agreements would be inconsistent

252 F.3d at 307. Thus, the plaintiffs' acceptance of the DRP probably would satisfy even a heightened "knowing and voluntary" standard in any event. See Cooper, 367 F.3d at 506 (concluding that entering into an arbitration agreement evidences a knowing and voluntary waiver of trial rights because the waiver of the right to a jury trial is an obvious and necessary consequence of entering into an arbitration agreement).

with the FAA and <u>Gilmer</u>).[14]

Thus, we proceed to the plaintiffs' final issue in the case – whether the DRP is a binding contract between the plaintiffs and Gulfstream under ordinary Georgia contract law.[15]

## C. Enforceability under Georgia law

The plaintiffs argue that, for various reasons, the DRP is not a binding contract under applicable Georgia law, and thus there is no underlying agreement to arbitrate to be enforced. Specifically, they argue that under Georgia law

---

[14]<u>But see</u> <u>Walker v. Ryan's Family Steak Houses, Inc.</u>, 400 F.3d 370, 381 (6th Cir. 2005) (holding arbitration agreement waiver of jury right to "knowing and voluntary" standard); <u>Prudential Ins. Co. of Am. v. Lai</u>, 42 F.3d 1299, 1305 (9th Cir. 1994) (concluding that "a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration").

[15]The plaintiffs further argue that a "knowing and voluntary" showing is required by the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f)(1), which applies to each of the plaintiffs' ADEA claims and requires any waiver of rights under the Act to be knowing and voluntary. However, this claim also is unpersuasive. "[T]he OWBPA protects against the waiver of a right or claim, not against the waiver of a judicial forum." <u>Williams v. Cigna Fin. Advisors, Inc.</u>, 56 F.3d 656, 660 (5th Cir. 1995); <u>Seus</u>, 146 F.3d at 183 n.2 (same).
The plaintiffs also argue that Georgia law precludes waiver of jury trial rights in contracts, based largely on <u>Bank South, N.A. v. Howard</u>, 444 S.E.2d 799, 799-800 (Ga. Ct. App. 1993). <u>Howard</u>, however, concerned a jury trial waiver in a guaranty agreement and did not involve an arbitration agreement. In <u>Howard</u>, the parties did not mutually agree to arbitrate covered claims; rather, the guarantor merely agreed to waive its right to a jury in any civil action filed to enforce the guaranty. Thus, when BankSouth sued Howard, the trial court struck Howard's jury demand. Reversing, the Georgia Supreme Court declined to enforce in a civil action a pre-litigation waiver of a jury trial in that civil action. In contrast, Georgia courts have upheld arbitration agreements. <u>See, e.g.</u>, <u>Wise v. Tidal Const. Co., Inc.</u>, 583 S.E.2d 466, 471 (Ga. Ct. App. 2003) ("Under the FAA, written agreements to arbitrate contained in contracts involving interstate commerce are valid and enforceable in federal and state courts." (quotation marks and citation omitted)). In any event, the FAA and federal law controls the waiver issue.

23

governing contracts (1) the DRP did not constitute an offer, (2) their continued employment did not constitute acceptance of the DRP under Georgia law, (3) there was no consideration for their obligations under the DRP, and (4) in any event, the DRP is unconscionable. We address each of the plaintiffs' contentions in turn.

1. Offer

The plaintiffs argue that the DRP does not constitute an "offer." We disagree. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts, § 24. The DRP clearly states that it is a contract, establishes the terms of the contract, and explains the means of accepting the contract. Thus, the DRP plainly constituted an offer.

The plaintiffs argue that no valid offer exists because the DRP allows Gulfstream to modify the DRP unilaterally. Thus, according to the plaintiffs, any promise by Gulfstream is illusory and not an offer. However, under Georgia law, "[a] promise is a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Kemira, Inc. v. Williams Investigative & Sec. Servs, Inc., 450 S.E.2d 427, 431 (Ga. App. 1994) (quotation marks and citation omitted). Furthermore, an "illusory promise" exists when "words of promise . . . by their

24

terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue." Id. (quotation marks and citation omitted).

Here, the DRP allows Gulfstream to modify the DRP only on notice, and the version of the DRP in effect at the time a claim is received governs the claim. As a result, Gulfstream is bound by the terms of the DRP with regard to covered claims, and its promise to be bound is thus not illusory. See, e.g., Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC, 379 F.3d 159, 174-75 (5th Cir. 2004) ("The fact that the company has the right to change the terms upon notice does not mean that the contract never bound it."); Blair, 283 F.3d at 604 (promise not illusory where employer retained unilateral power to modify employee handbook but was required to provide notice before doing so). Thus, we easily conclude that an offer exists under Georgia contract law.

2. Acceptance

The plaintiffs also contend that they cannot be deemed to have accepted the terms of the DRP simply by their continued employment, even though the DRP expressly provides that continued employment is the proper means of acceptance. However, we agree with the district court that the employees accepted the DRP through continued employment.

25

Under general principles of Georgia contract law, "'[a]n offer may be accepted . . . either by a promise to do the thing contemplated therein, or by the actual doing of the thing.'" Moreno v. Strickland, 567 S.E.2d 90, 92 (Ga. App. 2002) (quoting Herring v. Dunning, 446 S.E.2d 199, 199 (Ga. App. 1994)). However, "'[t]he offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act.'" Id. (quoting Herring, 466 S.E.2d 199); see also State v. U.S. Oil Co., 389 S.E.2d 498, 498 (Ga. App. 1989) (performing under a contract constitutes acceptance).

This general contract principle is no less applicable in the context of an employment contract. Georgia courts have held that an employee can accept new terms of employment of which the employee is aware by remaining in employment. See Fletcher v. Amax, Inc., 288 S.E.2d 49, 51 (Ga. App. 1981) ("It is the accepted law of this state that an additional compensation plan offered by an employee, by remaining in employment, constitutes a contract between them. . . .").[16]

_____

[16]We have located, and the parties have cited, no case applying this principle in the context of an arbitration agreement. However, to the extent Georgia law might attempt to apply a different rule to arbitration agreements from contracts generally, that rule would be preempted by the FAA, and the generally applicable principles would govern. See Perry, 482 U.S. at 492 n.9, 107 S. Ct. at 2527 n.9 ("[S]tate law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."); see also David L. Threlkeld & Co., 923 F.2d at 250 (holding that Vermont

26

Here, the DRP and the cover letter distributed with it clearly announced that the DRP was a contract, that "acceptance of employment or the continuation of employment by an individual shall be deemed to be acceptance of the DRP," that no signature would be required for the policy to be applicable, and that the policy would be a condition of continued employment. Thus, the DRP expressly established that the proper manner of accepting its terms was continued employment. Under Georgia law, then, the plaintiffs' act of continued employment constituted acceptance of the DRP. Moreno, 567 S.E.2d at 93 ("'The offer must be accepted in the manner specified by it; and if it calls for a promise, then a promise must be made; or if it calls for an act, it can be accepted only by the doing of the act.'") (quoting Herring, 446 S.E.2d at 203).

The plaintiffs also assert that remaining in Gulfstream's employ could not be an act of acceptance of the DRP because it simply continued the status quo; by continuing in employment, the plaintiffs performed no distinct, unambiguous act, but instead acted as they had in the past and as they would have in the absence of the DRP. We reject this argument. While the plaintiffs did continue their pre-DRP conduct by remaining in Gulfstream's employ, they did so in the face of changed circumstances. By specifying the manner of acceptance as continued employment

statute requiring that arbitration agreement be signed was preempted by the FAA).

27

and announcing that the DRP was a condition of employment, the DRP and accompanying letter plainly set forth two options for Gulfstream employees: (1) continue in employment, thereby accepting the DRP, or (2) terminate employment. Thus, given these two options, the employees' remaining in Gulfstream's employ after notice of the DRP was an unambiguous act of acceptance of the DRP.

Although Georgia law controls this issue, we note that our decision falls well within the mainstream of contract law. Both the Seventh and the Fifth Circuits have come to the same conclusion under similar circumstances, applying Wisconsin, Mississippi, and Louisiana law. In Tinder v. Pinkerton Sec., 305 F.3d 728, 730-33 (7th Cir.), an employee asserted that she never signed nor otherwise accepted her employer's unilaterally promulgated arbitration policy. Because the policy explicitly stated that remaining employed past the effective date evidenced assent to the policy and the employee remained on the job past the effective date, the Seventh Circuit concluded that she was deemed to have agreed under Wisconsin law.[17] Id. at 734-36. Similarly, in May v. Higbee Co., 372 F.3d 757,

_____

[17]In support of their position, plaintiffs cite an unpublished Sixth Circuit case holding that an employee was not bound by an employer's arbitration policy. Lee v. Red Lobster Inns of Am., Inc., 92 F.App'x. 158 (6th Cir. 2004) (unpublished). However, in that case, the employee was not informed that her continued employment would manifest acceptance. In fact, the Sixth Circuit specifically distinguished and agreed with the Seventh Circuit's Tinder decision, as follows: "The case at bar is distinguishable, of course, from cases in which employer-distributed materials told employees that their continuing to work would constitute acceptance of the employer's plan." Id. at 163 n.4. Citing Tinder, the Sixth Circuit continued, "In those cases, an employee's remaining at work past the effective date of the policy was properly construed as

28

764 (5th Cir. 2004), the Fifth Circuit applied Mississippi law and held that an employee manifested assent in her employer's unilaterally promulgated arbitration policy by continuing employment where she received a notice advising her of the rules and stating that continued employment would be deemed acceptance. The Fifth Circuit reached the same conclusion under Louisiana law in Marino v. Dillard's, Inc., 413 F.3d 530, 532 (5th Cir. 2005).[18]

---

manifestation of an agreement to be bound." Id.

[18]We recognize that in Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546 (1st Cir. 2005), the First Circuit concluded that a dispute resolution policy circulated to employees via a "link" at the bottom of an email was not binding on the employees. However, that case is both factually and legally distinguishable. Factually, in Campbell, the circulated message did not inform employees that the dispute resolution policy was a contract and that an employee would accept by continuing employment; rather, that information was contained in a separate brochure available at a link attached to the email message.

Further, as a legal matter, the Campbell court did not conclude that the alleged contract was unenforceable under generally applicable state law; rather, it concluded that it would be "inappropriate" to enforce the contract because the employees did not receive adequate notice. This appropriateness requirement, first applied by the First Circuit in Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 19 (1st Cir. 1999), stems from the language of Title VII stating that alternative means of dispute resolution, including arbitration, are encouraged to resolve disputes under the Civil Rights Act "[w]here appropriate and to the extent authorized by law." Id. at 9, 19 (concluding, based on language of Title VII, that arbitration agreement should be enforced only where "appropriate" and finding enforcement inappropriate where employer never provided employee with details of arbitration policy).

However, other courts have concluded that arbitration is "appropriate" for purposes of the Civil Rights Act where the FAA would require arbitration; the appropriateness language thus creates no additional requirement for an arbitration agreement to be enforceable. See, e.g., Seus, 146 F.3d at 183 (interpreting clause as a reference to the FAA). As the Campbell court acknowledged, "other courts have not flocked to adopt Rosenberg's reading of the word 'appropriate.'" 407 F.3d at 553 n.5. This Circuit has not adopted the Rosenberg "appropriate" requirement, and we decline to do so in this case.

In any event, we further note that Gulfstream's DRP did provide extensive details regarding its arbitration policy. See Weeks, 291 F.3d at 1314 (noting that the purpose of § 118 is to encourage rather than preclude arbitration and that claims under federal statutes are enforceable under the FAA).

29

We thus conclude that the plaintiffs' continued employment with Gulfstream after receipt of the DRP and accompanying clear notice constituted assent to the DRP's terms.[19]

3. Consideration

The plaintiffs next argue that the arbitration agreement is unenforceable because there is no "bargained for consideration" for their relinquishment of trial rights. They argue that the employees got nothing in return.

This argument is unavailing. Georgia law provides that mutual promises and obligations are sufficient consideration to support a contract. See Atlanta Six Flags P'ship v. Hughes, 381 S.E.2d 605, 607 (Ga. App. 1989) ("[T]he mutual promises and obligations of the parties constituted sufficient consideration for the contract."). Here, the plaintiffs received reciprocal promises from Gulfstream to arbitrate and be bound by arbitration in covered claims. In addition, the DRP provides that Gulfstream will pay the arbitration and mediation costs. These promises constitute bargained-for consideration.

The plaintiffs also argue that there is no consideration because Gulfstream's

_____

[19]The plaintiffs also argue that the agreement is ineffective because the employer cannot "agree on behalf of the employee." They cite cases holding that a union cannot agree on behalf of an employee. These cases are irrelevant. Of course the employer cannot agree for the employee; here, the district court properly determined that the employee agreed on the employee's own behalf – the employer simply set forth the means for acceptance of its offer.

promises are illusory because they can modify the DRP at any time. As explained above, this argument lacks merit because Gulfstream, unlike the employers in the cases cited by the plaintiffs, can modify the DRP only upon notice and is bound by the DRP in effect at the time it receives a claim. See Rushing v. Gold Kist, Inc., 567 S.E.2d 384, 388-89 (Ga. Ct. App. 2002) (holding that arbitration agreement was supported by sufficient consideration where offeror retained right to modify the disputes subject to arbitration under the agreement because they were equally bound by the policy's provisions); see also Iberia, 379 F.3d at 174-75 ("The fact that the company has the right to change the terms upon notice does not mean that the contract never bound it."); Blair, 283 F.3d at 604 (same).

The plaintiffs further argue that there are no mutual promises because only those causes of action likely to be brought by an employee are "covered claims," while the DRP allows court action for causes of action that would likely be brought by Gulfstream (such as trademark and trade secret claims and noncompetition violations).[20] However, the obligations are reciprocal for the class of covered claims. Thus, bargained-for consideration amply supported the DRP.

4. Unconscionability

---

[20]This assertion is not entirely true. For example, certain claims that would be brought by an employee, such as workers' compensation claims, are not covered, while tort claims (e.g., a suit for intentional interference with contract) are covered.

31

Finally, the plaintiffs argue that the DRP is unenforceable because it is both procedurally and substantively unconscionable.

They first argue that the DRP is procedurally unconscionable due to the employee's lack of bargaining power. In support, they cite various Georgia cases acknowledging the unequal bargaining power between an employer and employee, but none holding that such contracts are unconscionable as a result of that disparity. Indeed, Georgia courts have enforced standard-form arbitration agreements in employment relationships. Rushing, 567 S.E.2d at 388-89.

Under Georgia law, "[p]rocedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves." NEC Techs., Inc. v. Nelson, 478 S.E.2d 769, 771 (Ga. 1996). In determining whether a contract is procedurally unconscionable, Georgia courts look to the following factors: "age, education, intelligence, business acumen and experience of parties, their relative bargaining power, the conspicuousness of and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of meaningful choice." Id. at 772.

Although there is some bargaining disparity here, as often in the employment context, the plaintiffs have failed to show that the DRP and its making is so one-sided as to be unconscionable. Its terms are clear and were presented to

32

employees with a cover letter reflecting the importance of the policy, and its terms are not oppressive. Under these circumstances, the plaintiffs have failed to show that the DPR is procedurally unconscionable. See Gilmer, 500 U.S. at 32-33, 111 S. Ct. at 1655 ("Mere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements [are unenforceable]."); Saturna v. Bickley Constr. Co., 555 S.E.2d 825, 827 (Ga. Ct. App. 2001) ("Further, lack of sophistication or economic disadvantage of one attacking arbitration will not amount to unconscionability." (quotation marks and citation omitted)); see also Oblix, Inc. v. Winiecki, 374 F.3d 488, 490 (7th Cir. 2004) (applying California law and concluding fact that employee's employment was conditioned on arbitration agreement offered on a take-it-or-leave-it basis did not render it unconscionable).

Finally, the plaintiffs assert that certain terms of the DRP are substantively unconscionable. Specifically, they argue that the following aspects of the DRP are unconscionable: (1) Gulfstream's reservation of rights to sue for claims it may have while confining employees to arbitration for their likely causes of action; (2) the prohibition of class actions; (3) Gulfstream's reservation of the right to modify the DRP; (4) the limitations on discovery; (5) the "cloaking of DRP process in secrecy"; and (6) the one-way aspects of the process.

Under Georgia law, an unconscionable contract is "such an agreement as no

sane man not acting under a delusion would make and that no honest man would take advantage of." Hall v. Fruehauf Corp., 346 S.E.2d 582, 583 (Ga. Ct. App. 1986). None of the provisions challenged by the plaintiffs offends this standard.

Under the DRP, some claims, many of which would typically be brought by an employee, are subject to arbitration and others, many of which would be brought by Gulfstream, are not. However, this fact does not render the DRP unconscionable. The promises are mutual: both parties are required to arbitrate covered claims, and neither is required to arbitrate non-covered claims. The cases cited by the plaintiffs, which suggest that an arbitration agreement is unconscionable due to lack of mutuality if only the employee is required to arbitrate, are inapposite. In any event, Georgia law provides that "an arbitration provision [is] not unconscionable because it lack[s] mutuality of remedy." Saturna, 555 S.E.2d at 827.

The plaintiffs further argue that the DRP is unconscionable because it precludes class actions and because it limits discovery by allowing the taking of depositions only if authorized by the arbitrator. We disagree. "As the Supreme Court has explained, the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer "simplicity, informality, and expedition," see Gilmer, 500 U.S. at 31, 111 S. Ct. 1647 (internal

34

quotation marks omitted), characteristics that generally make arbitration an attractive vehicle for the resolution of low-value claims." Iberia, 379 F.3d at 174-75 (enforcing arbitration agreement with class-action prohibition and rejecting position that it was unconscionable because it immunized company from low-value claims); see also Randolph v. Green Tree Fin. Corp., 244 F.3d 814, 816 (11th Cir. 2001) (enforcing arbitration of TILA claims even though arbitration agreement precluded class actions under TILA).[21] The DRP's prohibition of class actions and discovery limitations are consistent with the goals of "simplicity, informality, and expedition" touted by the Supreme Court in Gilmer. See Gilmer, 500 U.S. at 31, 111 S. Ct. 1647.

The plaintiffs next argue that the DRP unconscionably requires that the parties not disclose transcripts from the arbitration or the arbitrator's award. In many employment claims, both sides might well prefer confidentiality. See Rosenberg v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 8 n.4 (1st Cir. 1999) (observing that both sides might desire confidentiality); see also Iberia, 379 F.3d at 175 (same, in cellular customer-provider context). We thus agree with

---

[21]We recognize that the Ninth Circuit in Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1176 (9th Cir.), cert. denied, 540 U.S. 1160, 124 S. Ct. 1169 (2003), found such a clause unconscionable. However, the Ninth Circuit was applying a California-law rebuttable presumption of unconscionability in employer-employee arbitration agreements. Georgia courts, unlike California courts, typically enforce contracts between parties of unequal bargaining positions, including in the employment context, and apply no such presumption.

the Fifth Circuit that while the confidentiality agreement might be more favorable to employers (as "repeat players") than to individual employees, it is not so offensive as to be invalid. Iberia, 379 F.3d at 175.[22]

Finally, the plaintiffs argue that several asymmetries in the DRP render it unconscionable. Specifically, they point to the fact that employees but not Gulfstream are required to exhaust steps prior to arbitration, that employees are prohibited from having counsel in the first two internal steps of the process, and that 30-day deadlines are imposed on employees but not on Gulfstream. Plaintiffs cite no Georgia authority for this argument. These provisions are reasonably designed to resolve claims as quickly and efficiently as possible, consistent with the goals of arbitration, and not so offensive as to be unconscionable.

### III. CONCLUSION

For the foregoing reasons, we conclude that the DRP constitutes an enforceable agreement to arbitrate, and the district court properly granted defendants' motions to dismiss and to compel arbitration. The district court's rulings are affirmed.

**AFFIRMED.**

---

[22]Gulfstream also points out that the confidentiality of settlements provides a helpful (although not perfect) analog.