[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 2, 2011
JOHN LEY
CLERK

No. 10-12989
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cv-03673-TWT

BRUCE WEINER,

Plaintiff - Appellant,

versus

TOOTSIE ROLL INDUSTRIES, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 2, 2011)

Before BARKETT, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Bruce Weiner appeals the denial of his motion to remand and the order compelling him to arbitrate his complaint against Tootsie Roll Industries, Inc. Weiner filed a complaint in a Georgia court for a declaratory judgment that he was not bound by a covenant not to compete in a contract he executed with Tootsie Roll, and Tootsie Roll removed the action to the district court. Weiner argues that his complaint does not satisfy the amount in controversy required for diversity jurisdiction and, alternatively, he is not contractually bound to arbitrate his dispute with Tootsie Roll. We affirm.

## I. BACKGROUND

Weiner, a resident of Georgia, owned interests in four companies. He was the co-founder and owner of 31 percent of Concord Confections, Inc., a privately owned business that manufactured and distributed Dubble Bubble gum and other confectionary products. Weiner also owned Alpharetta Confections, Inc., and he owned indirectly 31 percent of Concord Wax, LLC, and 30 percent of Terra Rouge Estates, Inc.

Tootsie Roll purchased Weiner's interest in the four companies. In August 2004, Tootsie Roll agreed to pay $217,210,500 for the assets and certain liabilities of "Sellers" Concord Confections, Alpharetta Confections, Concord Wax, and Terra Rouge Estates. The sellers and their stockholders—who consisted of

2

Weiner, two other persons, and an assortment of holding companies and trusts —agreed not to compete against or solicit the employees or former customers of Tootsie Roll for 10 years after the "Closing Date." Tootsie Roll purchased all the "right, title and interest in and to all of the assets of Sellers," which included their "Intellectual Property" and "goodwill associated therewith," and the agreement stated that the purchase price would be allocated among the assets "for all purposes . . . in accordance with the allocation schedule." Weiner signed the agreement on behalf of sellers Concord Confection, Terra Rouge Estates, Alpharetta Confections, and Concord Wax. Weiner also signed the agreement as a "Direct Stockholder" and as "President and Secretary" of two "Holding Company Stockholders," and as a trustee for two "Trust Stockholders."

The parties later amended the purchase agreement, and the amended agreement contained a superceding purchase price allocation schedule. The schedule allocated the purchase price among eleven items, including $27.5 million for "Alpharetta Customer Intangibles and Goodwill" and the balance of the purchase price remaining after payment of the other 10 items for "Concord Goodwill and Trademarks."

The sellers and Tootsie Roll agreed to arbitrate "any and all disputes . . . that relate[d] to [the] Agreement" except for "claims barred by the applicable survival

period" and "claims for preliminary or provisional injunctive relief." The arbitration clause stated that the disputes would be resolved "by arbitration administered by the American Arbitration Association ('AAA') in Chicago, Illinois under the then-effective Commercial Arbitration Rules of the AAA, in accordance with the Illinois Uniform Arbitration Act." The clause stated that the dispute would be submitted to a single arbitrator who would "have the authority to award any remedy or relief that a court in the State of Illinois . . . could order or grant, including specific performance of any obligation created under [the] Agreement." The agreement also contained a choice of law clause that stated the "Agreement and all disputes, claims or controversies relating to, arising out of, or in connection with [the] Agreement" would be "governed by, and construed in accordance with the domestic laws of the State of Illinois without giving effect any choice or conflict of law provision or rule . . . that would cause the application of the laws of any jurisdiction other than the State of Illinois."

In November 2009, Weiner filed a complaint in a Georgia court against Tootsie Roll. Weiner sought a declaratory judgment that the covenants in the purchase agreement were unenforceable as unreasonable as "to the time, geographic area, and scope of the prohibited business activity." Weiner argued that the arbitration clause "violat[ed] . . . Georgia law and contravene[d] Georgia's

4

strong public policy" and he did not "acknowledge his intent" to forego his "common law right of access to the courts . . . by initialing the employment related arbitration clauses."

When Tootsie Roll removed the action to the district court based on diversity of citizenship, 28 U.S.C. § 1332, Tootsie Roll argued that the value of the relief sought by Weiner—that is, restoring his right to compete—exceeded the required amount in controversy in two ways. First, Weiner would receive "far in excess of $75,000" for the "benefit that he promised to Tootsie Roll, but will not provide" because Weiner had received "in excess of $85 million" in exchange "for his interest" in the four companies and "for his agreement not to compete with Tootsie Roll following the sale." Second, Weiner would earn "much more than $75,000" during the four years remaining under the contract based on "his historical earnings" in 2003 of $3.4 million as the "sole shareholder and CEO of Alpharetta Confections" and $96,000 as the "Executive Vice President for Sales & Marketing for Concord Confections Inc."

After it removed the action, Tootsie Roll moved to compel Weiner to arbitrate his complaint. Tootsie Roll argued that the "express terms of the arbitration provision" in the purchase agreement required Weiner to submit his complaint to arbitration. Tootsie Roll also argued that the arbitration provision

was enforceable under federal and Illinois law, as well as Georgia law.

The district court decided the parties' motions based on the pleadings. The district court denied Weiner's motion to remand, and the district court granted the motion of Tootsie Roll to compel arbitration.

## II. STANDARDS OF REVIEW

Two standards govern our review of this appeal. We review <u>de novo</u> the denial of Weiner's motion to remand and the order compelling him to arbitrate. <u>See</u> <u>Moore v. N. Am. Sports, Inc.</u>, 623 F.3d 1325, 1328 (11th Cir. 2010); <u>Pendergast v. Sprint Nextel Corp.</u>, 592 F.3d 1119, 1132 n.11 (11th Cir. 2010). We review findings of jurisdictional facts for clear error. <u>See</u> <u>Scarfo v. Ginsberg</u>, 175 F.3d 957, 960 (11th Cir. 1999).

## III. DISCUSSION

We divide our discussion in two parts. First, we address whether the district court erred when it denied Weiner's motion to remove. Second, we address whether the district court erred when it compelled Weiner and Tootsie Roll to arbitrate.

*A. The District Court Did Not Err when It Denied Weiner's Motion to Remand.*

A defendant may remove an action to a district court that would have original jurisdiction because the citizenship of the parties is diverse and the

amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The parties dispute only whether Tootsie Roll established by a preponderance of the evidence that Weiner's complaint satisfied the amount in controversy requirement. See Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010). Because Weiner seeks declaratory relief, the amount in controversy is the "'monetary value of the object of the litigation from [his] perspective.'" Fed. Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 807 (11th Cir. 2003) (quoting Cohen v. Office Depot, Inc., 204 F.3d 1069, 1077 (11th Cir. 2000)). Tootsie Roll was not "required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." Pretka, 608 F.3d at 754. Instead, Tootsie Roll had only to present "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations," id., that the value of restoring Weiner's right to compete exceeded $75,000.

The district court did not clearly err when it found that the value of the object of Weiner's complaint against Tootsie Roll exceeded $75,000. Although a covenant not to compete "generally [is] not susceptible to an abstract fair market valuation," Better Beverages, Inc. v. United States, 619 F.2d 424, 429 (5th Cir. 1980), Tootsie Roll does not seek to "tether[] [value] to the fact of the transaction," id. at 430. In contrast to the situation in Better Beverages, where a

7

taxpayer sought to assign a value to his covenant not to compete when there was no allocation made for the components of the business he sold, Weiner and Tootsie Roll assigned millions of dollars of value to the goodwill of the companies transferred to Tootsie Roll, and Weiner acknowledged in paragraph 52 of his complaint that his agreement not to compete was a component of that goodwill. Although Weiner alleged in his complaint that the "goodwill associated with [his] reputation is de minimis," Weiner was compensated handsomely for the goodwill transferred to Tootsie Roll, and even a small percentage of that total exceeds the jurisdictional threshold. In addition, Tootsie Roll presented undisputed evidence that Weiner collected millions of dollars in 2003 for his ownership interest in the companies and that, in 2003 and 2004, Weiner and several high-ranking salaried employees of Concord Confections and Alpharetta Confections earned more than the jurisdictional threshold. The district court did not clearly err when it found that Tootsie Roll established by a preponderance of the evidence that the value of the relief sought by Weiner exceeds the required amount in controversy.

*B. The District Court Did Not Err by Granting the Motion of Tootsie Roll to Compel Arbitration.*

"The 'validity of an arbitration agreement is generally governed by the Federal Arbitration Act.'" Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir.

8

2008) (quoting Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005)).  The Act promotes enforcement of written agreements to arbitrate, see 9 U.S.C. § 2, "in the manner provided for in [the parties'] agreement," id. § 4.  As a result, contracting "parties who do agree to arbitrate" are free to "exclud[e] certain claims from the scope of their arbitration agreement."  Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S. Ct. 1248, 1255 (1989).  Weiner and Tootsie Roll agreed that, "except for claims barred by the applicable survival period in [section] 8(a)" and "claims for preliminary or provisional injunctive relief . . ., any and all disputes . . . that relate[d] to [the] Agreement" would be "determined solely and exclusively by arbitration."

Weiner argues that a provision in the covenant not to compete allows him to litigate its validity in "a court of competent jurisdiction," and in turn, trumps the agreement to arbitrate, but we disagree.  Because the Arbitration Act "creates a presumption in favor of arbitrability," the "parties must clearly express their intent to exclude categories of claims from their arbitration agreement."  Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1057 (11th Cir. 1998).  The provision of the covenant not to compete cited by Weiner does not exclude from arbitration an action to declare the covenant wholly unenforceable.  The provision instead addresses relief entered by a court of competent jurisdiction to enforce the

9

covenant in whole or in part. The agreement provides that the covenant is enforceable "to the fullest extent permissible" and, if any portion is modified or severed, the revised or remaining portions are enforceable:

> The Parties hereby agree and acknowledge that the duration, scope and geographic area applicable to each of the restrictions set forth above are fair, reasonable and necessary. The consideration provided for in this Agreement is sufficient and adequate to compensate each Seller and each Stockholder . . . for agreeing to each of the restrictions contained above. However, in the event that any of [sic] portion of the restrictions set forth above shall be determined by any court of competent jurisdiction to be unenforceable, including by reason of their being extended over too great a period of time or too large a geographic area or over too great a range of activities, it shall be interpreted to extend only over the maximum period of time, geographic area, or range of activities as to which it may by [sic] be enforceable. Each provision and part of a provision herein shall be deemed a separate and severable covenant. It is the desire and intent of the Parties that the provisions of this Agreement be enforced to the fullest extent permissible under the laws and public policies applied in each jurisdiction in which such enforcement is sought. Accordingly, a court of competent jurisdiction is directed to modify any provision to the extent necessary to render such provision enforceable and if such cannot lawfully be done, then to sever any such portion of a provision, but only such portion of a provision necessary to cause the remaining provisions or portions of provisions to be enforceable. If the final judgment of a court of competent jurisdiction declares that any term or provision of this §6(d) is invalid or unenforceable, the Parties agree that the court making the determination of invalidity or unenforceability shall have the power to reduce the scope, duration or area of the term or provision, to delete specific words or phrases, or to replace any invalid or unenforceable term or provision with a term or provision that is valid and enforcement and that comes closest to expressing the intention of the invalid or unenforceable term or provision, and this Agreement shall be enforceable as so modified after the expiration of the time within which

10

the judgment may be appealed.

The district court did not err by compelling Weiner to arbitrate his complaint. The Arbitration Act requires that courts "enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms," Volt, 489 U.S. at 478, 109 S. Ct. 1255, and Illinois caselaw likewise provides that "'the rights of parties to a contract are limited by the terms expressed in the contract,'" Berryman Transfer and Storage Co., Inc. v. New Prime, Inc., 345 Ill. App. 3d 859, 863, 802 N.E.2d 1285, 1288 (2004) (quoting Jewelers Mut. Ins. Co. v. Firstar Bank Ill., 341 Ill. App. 3d 14, 26, 792 N.E.2d 1, 11 (2003)). Although the arbitration clause states that Weiner and Tootsie Roll will submit to arbitration "any and all disputes" subject to two stated exceptions, Weiner's interpretation would create a third exception for all disputes involving the covenant not to compete. Weiner's argument is inconsistent with and would invalidate the carefully drafted language of the agreement. Courts are bound to "rigorously enforce agreements to arbitrate" consistent with their stated terms. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S. Ct. 1238, 1242 (1985). The agreement obliges Weiner to submit his action to arbitration.

Weiner also argues that the covenant not to compete is unenforceable because Georgia law provides that arbitration is not required in "[a]ny contract

11

relating to terms and conditions of employment unless the clause agreeing to arbitrate is initialed by all signatories at the time of the execution of the agreement," Ga. Code Ann. § 9-9-2(c)(9), but this argument too fails. We need not address whether Georgia law applies to the action because section 9-9-2 does not govern the agreement between Weiner and Tootsie Roll. See Joja Partners, LLC v. Abrams Props., Inc., 262 Ga. App. 209, 212, 585 S.E.2d 168, 171–72 (2003) (discussing the narrow interpretation of section 9-9-2(c)(9)). Weiner and Tootsie Roll do not share an employer-employee relationship.

## IV. CONCLUSION

We **AFFIRM** the denial of Weiner's motion to remand and the order compelling him to arbitrate his complaint.