## A98A1023. MULLIS v. SPEIGHT SEED FARMS, INC.

(505 SE2d 818)

BLACKBURN, Judge.

Eugene Mullis, purchaser of tobacco seed, sued Speight Seed Farms, Inc., the seed manufacturer, for damages resulting from allegedly defective seed. The trial court granted summary judgment to Speight, and Mullis appeals. For the reasons that follow, we reverse.

On appeal from a trial court's grant of summary judgment, the evidence is reviewed de novo. *Gentile v. Bower*, 222 Ga. App. 736 (477 SE2d 130) (1996). In order to prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that no genuine issue of material fact remains for trial and that the undisputed facts and inferences reasonably drawn therefrom, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Gentile*, supra at 736-737.

Viewed in this light, the record reveals these pertinent facts: In November 1994, Mullis, a commercial tobacco farmer, telephoned Ellenton Farm Supply and ordered a quantity of Speight's G-70 tobacco seed. Neither Mullis nor Ellenton's employee discussed whether the seed was sold subject to any limitation of warranty or remedy. They only discussed seed variety and price. After Mullis picked up his seeds from Ellenton, he read certain information on the label, which led him to believe he needed more seed than originally planned. He did not, however, read the limitations of warranty and remedy printed on the label. The label on the seed can provided: "NOTICE TO PURCHASER: Speight Seed Farms ("Speight") warrants that, at the time of delivery, the seeds in this container conform to the label description as required under state and federal laws. Speight makes no other warranties whether written, oral, statutory, express or implied, including but not limited to warranty of merchantability, fitness for a particular purpose, or otherwise, that would extend beyond such descriptions contained herein. In any event, *Speight's liability for breach of any warranty with respect to*

*such seeds shall be limited to the purchase price.* Purchaser assumes the risk for results obtained from use of such seeds, including but not limited to the condition under which the seeds are planted, germinated, or grown."

Mullis placed a second seed order in December 1994. Again, warranties were not discussed. Mullis planted the seed. The following spring, Mullis' tobacco fields failed to produce as anticipated, and only about 15 percent of the seed germinated and produced viable plants. Mullis and other farmers attributed the crop failure to the improper pelleting of the tobacco seed.

Mullis filed suit against Speight and others contending the seed was defective and caused economic losses to him in excess of $15,000. Speight moved for summary judgment, contending that Mullis could recover only under a warranty theory; that Speight had effectively limited its warranties, including the warranty of merchantability and fitness for a particular purpose in its disclaimer printed on the seed can; and, that if Speight was liable under a breach of warranty theory, Mullis could recover only his purchase price because his remedies had been so limited in the disclaimer. The superior court granted Speight's motion, finding that the limitations and disclaimers on the seed label were neither unconstitutional nor unconscionable. Whether the warranty disclaimer and limitation of remedies provisions found on Speight's label are unconscionable is an issue of first impression in Georgia.

Although a seller may exclude or modify warranties, see OCGA § 11-2-316, and limit available remedies, see OCGA § 11-2-719, the court, as a matter of law, can find that any clause of the contract is unconscionable and refuse to enforce the clause or the contract. See OCGA § 11-2-302.[1] See also *NEC Technologies v. Nelson,* 267 Ga. 390 (478 SE2d 769) (1996) (discussing unconscionability with regard to an exclusion of incidental and consequential damages resulting from use of a television set). Additionally, OCGA § 11-2-719 (2) requires that the limitation of remedy must not "fail of its essential purpose." Other jurisdictions have also determined that warranty disclaimers made pursuant to UCC § 2-316 are limited by the conscionability requirement in UCC § 2-302. See *Martin v. Joseph Harris Co.,* 767 F2d 296, 299 (6th Cir. 1985) and *Schmaltz v. Nissen,* 431 NW2d 657,

---

[1] OCGA § 11-2-302 provides: "(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."

661-662 (S.D. 1988). Such cases rely on § 2-302's specific application to "any clause" of a contract and § 2-316's failure to expressly exclude application of § 2-302's requirements. See *Martin*, supra at 299.

Speight relies on *NEC Technologies*, supra (television set), *McCrimmon v. Tandy Corp.*, 202 Ga. App. 233 (414 SE2d 15) (1991) (computer hardware and software), and *Apex Supply Co. v. Bendow Indus.*, 189 Ga. App. 598 (376 SE2d 694) (1988) (piping), for its position that its limitation of remedy provision should be upheld as valid. However, such cases are distinguishable as they involve products such as television sets, computers, and piping, the value of which is established by the product itself, rather than agricultural seeds, the value of which is established by the plant grown from the seed. In other words, Mullis was forced to expend substantial sums of money for bed preparation, fumigation, plastic covering for the seed beds, labor, fertilizer, and irrigation, before the seed was of any benefit to him. Additionally, products such as television sets, computers, and piping are subject to repair or replacement remedies, whereas a failed crop is not repaired or replaced by the original cost of the seed. The Supreme Court of Georgia has noted that a determination of unconscionability must be made "in the light of the general commercial background and the commercial needs of the *particular trade or case*." (Punctuation omitted; emphasis supplied.) *NEC Technologies*, supra at 391. Therefore, Speight's reliance on cases involving television sets, computers, and piping is misplaced.

"It has been recognized that 'unconscionability' as set forth in UCC § 2-302 is 'not a concept, but a determination to be made in light of a variety of factors not unifiable into a formula.' (Footnote and emphasis deleted.) Vol. 1, White & Summers, Uniform Commercial Code (4th ed.), p. 213, § 4-3. See also *A & M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 120 (App. 1982) (unconscionability is 'a flexible doctrine designed to allow courts to directly consider numerous factors which may adulterate the contractual process'). Foreign courts have generally divided the relevant factors into procedural and substantive elements. See UCC-Unconscionable Warranty Disclaimer, 38 ALR4th 25, §§ 2, 3 (a) (b). Procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves. Id.; White & Summers, supra. A non-inclusive list of some factors courts have considered in determining whether a contract is procedurally unconscionable includes the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice. See, e.g., *Fotomat Corp. of Fla. v. Chanda*, 464 S2d 626, 629 (Fla. App. 5th Dist. 1985); *Wille v. South-*

*western Bell Tel. Co.*, 549 P2d 903, 906-907 (Kan. 1976) (commercial transaction); *Schroeder v. Fageol Motors*, 544 P2d 20, 23 (Wash. 1975). See also White & Summers, supra, p. 215, § 4-3, fn. 15. As to the substantive element of unconscionability, courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns. See, e.g., *Fotomat Corp. of Fla. v. Chanda*, supra, 464 S2d at 629; *A & M Produce Co. v. FMC Corp.*, supra, 186 Cal. Rptr. at 122 (commercial transaction). See also White & Summers, supra, §§ 4-4 through 4-6." *NEC Technologies*, supra at 391-392.

"The procedural element focuses on two factors: 'oppression' and 'surprise.' 'Oppression' arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice.' 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." (Citations omitted.) *A & M Produce Co. v. FMC Corp.*, supra, 186 Cal. Rptr. at 121-122.

In the present case, Mullis is a farmer, not a professional seed merchant. Mullis purchased the seed over the telephone during a conversation in which only the seed variety and price were discussed. Speight's president deposed that Speight does not negotiate warranty terms with any customers. Mullis, "like most farmers, was not in a position to bargain for more favorable contract terms, nor was he able to test the seed before the purchase. A crop failure is inevitable if the [tobacco] seed is ineffective and to enforce the provisions here in question, which would only allow the return of the purchase price, would leave [Mullis] without any substantial recourse for his loss. In essence, [Mullis] would be left without a remedy for another's breach." *Hanson v. Funk Seeds Intl.*, 373 NW2d 30, 35 (S.D. 1985).

With regard to the surprise factor, at the time the contract was made to purchase the seed over the telephone, Mullis was not made aware of the warranty disclaimer or the limitation of remedies provisions. Additionally, considering the substantive element of unconscionability, it is apparent that the allocation of risk for ineffective seeds is better shouldered by the manufacturer of the seed, rather than the consumer. The consumer does not have the ability or resources to test the seed prior to its use; however, the manufacturer does. Furthermore, the farmer is required to expend large sums of money before any defect in the seed is noticeable, and once a defect is found an entire year's crop might be worthless. Once the crop has failed, the farmer's only recourse is monetary compensation to cover his lost profit and expenditures; replacement and repair are not viable options. The manufacturer is also in a better position to allocate

the cost of testing among all consumers of its product.

Our review of this area of law in other jurisdictions revealed a substantial number of cases wherein warranty disclaimers and limitation of remedy provisions were found to be unconscionable in similar factual settings such as the purchase of seeds for crops or pesticides to control weeds on crops grown for commercial purposes. See *Lutz Farms v. Asgrow Seed Co.*, 948 F2d 638 (10th Cir. 1991) (limitation of remedies provision on onion seed labels and invoice was unconscionable as it failed of its essential purpose); *Martin v. Joseph Harris Co.*, supra (disclaimer of warranty and limitation of remedy clause used by cabbage seed producer were unconscionable under Michigan law due to unequal bargaining position between farmer and seed producer, existence of latent defect in seed, and seed producer's knowledge of potential defect); *Schmaltz v. Nissen*, supra (disclaimer of warranty and limitation of remedy used by sorghum seed manufacturer were unconscionable as they left farmer without substantial redress for loss); *Hanson v. Funk Seeds Intl.*, supra (court found warranty disclaimer and limitation of remedy provision unconscionable in action by farmer against seed corn supplier because farmer not in position to bargain or able to test seed and enforcement of such provisions would leave farmer without a remedy); *Durham v.* Ciba-Geigy Corp., 315 NW2d 696 (S.D. 1982) (court determined that disclaimer of warranty and limitation of consequential damages found on pesticide's pre-printed label were unconscionable and contrary to public policy as they left consumer without substantial recourse for loss); *Mallory v. Conida Warehouses*, 350 NW2d 825 (Mich. App. 1984) (court found limitation of remedy to purchase price of red kidney bean seed was unconscionable). Compare *Jones v. Asgrow Seed Co.*, 749 FSupp. 836 (N. D. Ohio 1990) (limitation of liability not unconscionable where limitation was conspicuous, buyer was experienced commercial tomato seed buyer, not an ordinary consumer, and seed contained undiscoverable latent defect); *Nunes Turfgrass v. Vaughan-Jacklin Seed Co.*, 246 Cal. Rptr. 823 (1988) (seller's limitation of consequential damages clause in sales confirmation for sale of commercial sod seed mix was not unconscionable where both buyer and seller were large commercial entities familiar with sod seed business and had done business together for 20 years). But see *A & M Produce Co. v. FMC Corp.*, supra (disclaimer of warranties and exclusion of consequential damages contained in form contract selling farming equipment were unconscionable).

Based on the foregoing, we find Speight's disclaimer of warranty and limitation of remedies provisions to be unconscionable and unenforceable under the facts of this case. Therefore, the trial court erred in granting Speight's motion for summary judgment.

*Judgment reversed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 19, 1998 —

*Sellers & Prevatt, Ernest A. Sellers, Jr.*, for appellant.
*Short & Fowler, Larkin M. Fowler, Jr., Brian A. McDaniel*, for appellee.