Gene **DALE, Marrell Waring, Rebecca Shrager, Valerie Janssens, Richard Richmond, Eva Lautemann, Carlyce Burns, and all others similarly situated, Plaintiffs,**

v.

**COMCAST CORPORATION, Defendant.**

Civil Action No. 1:05–CV–3315–WCO.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 18, 2006.

---

Anne Ware Lewis, Frank B. Strickland, Mary M. Brockington, Strickland Brockington Lewis, Kevin Trent Moore, Office of Kevin T. Moore, William A. Pannell, William A. Pannell PC, Atlanta, GA, for Plaintiffs.

David A. Konuch, White & Case, Jaime A. Bianchi, White & Case, Miami, FL, Nolan C. Leake, Ranse M. Partin, King & Spalding, Llp, Atlanta, GA, for Defendant.

## ORDER

O'KELLEY, Senior District Judge.

The captioned case is before the court for consideration of defendant's motion to compel arbitration and motion to dismiss [7–1] and plaintiffs' motion for trial and motion for oral argument [22–1].

### I. Factual Background and Procedural History

On October 20, 2005, plaintiffs filed suit against defendant in Fulton County Superior Court. Defendant removed the action to this court on December 29, 2005[1–1].[1] Plaintiffs are subscribers to defendant's cable television services who claim that defendant overcharged them for these services in violation of the Cable Communications Policy Act, 47 U.S.C. § 522 et seq. (the "Cable Act"). Plaintiffs purport to represent a class of "[a]ll Comcast cable subscribers, other than officers, directors, major shareholders and employees of Comcast and its subsidiaries, who have been charged franchise fees in excess of the base amount required by their local franchise authority." (Compl.¶ 10). Defendant now requests that the court dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) and compel arbitration. Defendant claims that plaintiffs' suit is barred by the arbitration clause contained in its subscriber agreement.

Plaintiffs Dale, Shrager, Lautemann, and Janssens began subscribing to cable television service from defendant's predecessor, AT & T Broadband, prior to November 2002. (Macke Decl. ¶ 6.) Plaintiff Richmond began subscribing to defendant's cable television service in June 2003. (Id.) Plaintiff Waring began subscribing to defendant's cable television service in

---

1. Defendant agreed to waive service on December 2, 2005. Thus, defendant's notice of removal was timely under 28 U.S.C. § 1446(b) as it was filed within thirty days of defendant's waiver of service.

July 2004.(*Id.*) Plaintiff Burns began subscribing to cable television service from defendant in approximately July 2005. (*Id.* ¶ 7.)

Defendant's written Subscriber Agreement sets forth the terms of the subscriber relationship between defendant and its subscribers. As a matter of standard operating procedure, defendant provides its subscribers a copy of the Subscriber Agreement at the time of installation of service. (Macke Decl. ¶ 7.) Thereafter, on an annual basis, defendant disseminates notices of its policies and practices to its subscribers by including them in the subscribers' monthly bills. (*Id.* ¶ 3.) Pursuant to this practice, defendant included the policies and practices containing the arbitration provisions that were in effect at the filing of this lawsuit with each Atlanta area subscriber's invoice as a billing stuffer entitled "Important Notices to Our Customers: Your Local Cable Company's Policies & Practices" during the December 2004 billing cycle. (*Id.* ¶ 4.) This same version of the Subscriber Agreement was given to new subscribers at the time of installation throughout 2005. (*Id.* ¶ 7.)

At the time of installation, along with the Subscriber Agreement, defendant provides its customers with other information concerning service in a document called a "Welcome Kit." (Further Macke Decl. ¶ 8.) It is defendant's practice to obtain the signature of the owner or resident of the subscriber's property on a document known as a "Work Order" at the time of installation of service or of service and repair visits. (*Id.* ¶ 4.) Above the customer signature line on the Work Order is the following language: "I acknowledge receipt of Comcast's Welcome Kit which contains the Comcast Subscriber Agreement ... I agree to be bound by the current Comcast Subscriber Agreement." (See Further Macke Decl., Exs. A–E.)

Defendant moves to compel arbitration based on the arbitration provisions in the 2004 version of the Subscriber Agreement. This version of the Subscriber Agreement, which was included in the December 2004 invoices and given to new subscribers during 2005, contains a provision that allows either party to require binding arbitration of "any dispute, claim or controversy between [plaintiff] and Comcast ... whether based in contract, statute, regulation, ordinance, tort ... or any other legal or equitable theory." (Macke Decl., Ex. A, at § 13(B).) Thus, defendant requests that the court order plaintiffs to submit their claims to binding arbitration and dismiss this action. Plaintiffs have filed a response in opposition to defendant's motion. Plaintiffs have also filed a motion for a jury trial on the issue of whether a valid agreement to arbitrate exists. Plaintiffs also requested oral argument on defendant's motion to compel and motion to dismiss. The parties were given the opportunity to present their arguments on these matters to the court during a May 18, 2006 status conference.

## II. Motion to Compel Arbitration

Defendant contends that this court must enforce the arbitration provisions contained in the Subscriber Agreement and require plaintiffs to submit their claims to arbitration on an individual basis. Plaintiffs argue (1) that defendant has failed to establish the existence of an arbitration agreement; (2) that plaintiffs' claims are not covered by the arbitration provisions; (3) that the arbitration provisions are unenforceable due to their unconscionability; and (4) that defendant has waived its right to arbitrate. The court will address each of these arguments in turn.

### A. Agreement to Arbitrate

Although the validity of an arbitration agreement is generally governed

by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, state law generally governs whether an enforceable contract or agreement to arbitrate exists. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367–68 (11th Cir.2005). In determining whether a binding agreement to arbitrate arose between the parties, the court must apply the state law governing the formation of a contract. *Id.* at 1368. However, as the FAA is "preemptive of state laws hostile to arbitration," the court should take into consideration the federal policy favoring arbitration. *Id.* at 1367–68 (quoting *Circuit City v. Adams*, 532 U.S. 105, 112, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)).

■ Plaintiffs first argue that defendant has failed to demonstrate the existence of an agreement to arbitrate. All plaintiffs deny that they ever entered into a written arbitration agreement with defendant. (Dale Decl. ¶ 6; Waring Decl. ¶ 4; Shrager Decl. ¶ 4; Lautemann Decl. ¶¶ 5–6; Janssens Decl. ¶ 4; Richmond Decl. ¶ 3; Burns Decl. ¶ 4.) Plaintiffs either deny or do not recall having received any documents containing the arbitration provisions prior to filing this lawsuit. (Dale Decl. ¶¶ 7–8; Waring Decl. ¶ 7; Shrager Decl. ¶ 7; Lautemann Decl. ¶ 8; Janssens Decl. ¶ 7; Richmond Decl. ¶ 7; Burns Decl. ¶ 7.)

■ The court, however, is persuaded that the totality of the evidence establishes that defendant mailed the Subscriber Agreements containing the arbitration provisions and that plaintiffs received them.

The declaration of James Macke, director of government and community affairs for defendant's Atlanta region, states that, as a matter of routine practices, the documents were mailed to six of the seven plaintiffs at their billing addresses of record during the December 2004 billing cycle. (Macke Decl. ¶¶ 3–4.) Furthermore, defendant has also shown that all plaintiffs paid their bills in the month following the receipt of the documents, indicating that the mail reached the intended recipients. The law recognizes "a rebuttable presumption that an item properly mailed was received by the addressee." [2] *Konst v. Fla. E. Coast Ry.*, 71 F.3d 850, 851 (11th Cir. 1996). Defendant has also presented evidence that, at the installation of her service in July 2005, plaintiff Burns received a Welcome Kit containing the Subscriber Agreement and signed a Work Order acknowledging such receipt. (Macke Decl. ¶ 7; Further Macke Decl., Ex. E.) Based on defendant's evidence, the court finds that plaintiffs' denials and/or conclusory declarations that they do not recall receiving copies of the arbitration provisions are insufficient to defeat defendant's motion to compel.

Plaintiffs next argue that defendant cannot compel arbitration based on the arbitration provisions in the 2004 version of the Subscriber Agreement as they merely amend underlying agreements that defendant has failed to produce. Plaintiffs argue that, because defendant has failed to show the existence of a valid contract,

---

**2.** Furthermore, federal law permits a cable company to notify subscribers of changes in their cable service agreements by "any reasonable written means at its sole discretion." 47 U.S.C. § 552(c). Thus, notice of defendant's arbitration provisions sent by mail constitutes a reasonable means of providing notice. See H.R. Rep. 104–204, 1996 U.S.C.C.A.N. 10, 79 ("The purpose of the notice requirement is to ensure that consumers

have sufficient warning about rate and service changes so that they can choose to disconnect their service prior to implementation of the change."); *see also, Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir.1997) (enforcing an arbitration clause sent to a consumer via mail after expiration of the 30–day opportunity to return the product and reject the terms and conditions).

defendant cannot show a meeting of the minds as to the terms of the 2004 document. For this proposition, plaintiffs cite to Georgia law requiring a "meeting of the minds as to all essential terms" to constitute a valid and enforceable contract. *TranSouth Fin. Corp. v. Rooks,* 269 Ga. App. 321, 604 S.E.2d 562, 564 (2004). Plaintiffs argue that they did not assent to be bound by the terms of the 2004 version of the Subscriber Agreement.

■ The 2004 notice containing defendant's policies and procedures states as follows:

> This notice provides important information regarding your cable television service.
>
> We may change this information in the future. We will send you a written, electronic or other appropriate notice informing you of any changes and the effective date. If you find the change unacceptable, you have the right to cancel your service. However, if you continue to receive our service after the effective date of the change, we will consider this your acceptance of the change. . . .
>
> THE CUSTOMER NAMED ON THE WORK ORDER ("CUSTOMER," "YOU" OR "YOUR") AND COMCAST ("COMPANY," "WE" OR "US") AGREE TO THE TERMS AND CONDITIONS ON THE WORK ORDER AND BELOW ("AGREEMENT") FOR THE PROVISION OF CABLE TELEVISION SERVICE ("SERVICE"). BY SIGNING THE WORK ORDER OR USING THE SERVICE, YOU AGREE TO BE BOUND BY THIS AGREEMENT. . . .

> This Agreement constitutes the entire agreement between you and the Company.

(Macke Decl., Ex. A.) This notice, therefore, purports to be not only an update of defendant's policies and procedures but also an agreement between defendant and its subscribers. The document states that it is an agreement and provides all the material terms. It also states that the manner of acceptance should be the subscriber's continuation of his or her service. As the Eleventh Circuit has noted, contracts that call for acceptance by performance can generally be accepted by such performance under Georgia law. *Caley,* 428 F.3d at 1374 (citing *Moreno v. Strickland,* 255 Ga.App. 850, 567 S.E.2d 90, 92 (2002)). Indeed, defendant has shown that all seven plaintiffs continued their service after receipt of the Subscriber Agreements despite the fact that they were given an opportunity to cancel their service.[3] Defendant, therefore, has established that plaintiffs assented to the terms and conditions of the 2004 version of the Subscriber Agreement, including the arbitration provisions.

Thus, the court concludes that defendant has shown that a valid agreement to arbitrate exists. The Subscriber Agreement— which includes the arbitration provisions— constitutes a valid agreement between the parties. Defendant has established that plaintiffs received the agreement either through the mail or by hand-delivery at the time of installation or both. Defendant has also established that plaintiffs agreed to the provisions by continuing to accept the service.

---

**3.** Additionally, the court notes that defendant has produced Work Orders signed by plaintiffs Dale, Waring, Shrager, Janssens, and Burns wherein each plaintiff either acknowledged receipt of the Welcome Kit containing the Subscriber Agreement and agreed to be bound by its provisions or agreed to continue to be bound by the current Subscriber Agreement. (Further Macke Decl., Exs. A–E.)

## B. Scope of Arbitration Provision

Plaintiffs next argue that their claims are class action claims for theft that are not covered by the arbitration provisions. The 2004 Subscriber Agreement states, in pertinent part:

> If you have a dispute (as defined below) with Comcast that cannot be resolved through the informal dispute resolution process described in this notice from Comcast, you or Comcast may elect to arbitrate that dispute in accordance with the terms of this Arbitration Provision rather than litigate the dispute in court.... ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY NAMED, THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR ON BASIS INVOLVING CLAIMS BROUGHT IN PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS SIMILARLY SITUATED....
> YOU AND COMCAST AGREE THAT THE FOLLOWING WILL NOT BE SUBJECT TO ARBITRATION: ... ANY DISPUTE RELATED TO OR ARISING FROM ALLEGATIONS ASSOCIATED WITH UNAUTHORIZED USE, THEFT OR PIRACY OF SERVICE.

(Macke Decl., Ex. A §§ 13A, E, & I.) Although the court will address plaintiffs' arguments relating to the scope of the arbitration provision, it must keep in mind the federal policy favoring arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("The [Federal] Arbitration Act establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

■ Plaintiffs first assert that this document does not require arbitration but merely permits either party to choose to resolve disputes through arbitration. Plaintiffs contend that although defendant wishes to arbitrate the dispute, plaintiffs cannot be compelled to do so. The arbitration provision at issue, however, states that either the subscriber "or Comcast may elect to arbitrate" the dispute. (Macke Decl., Ex. A § 13A) (emphasis added). As this language is disjunctive rather than conjunctive, the provision does not require the consent of the other party to send the dispute to arbitration. The court also notes that the section of the Subscriber Agreement setting forth the arbitration provisions is titled "Mandatory and Binding Arbitration," indicating defendant's intent that either party could compel the other to arbitrate a dispute.

Plaintiffs next argue that as their claims are class action claims for theft, they are specifically excluded from this arbitration agreement. However, under the language of the arbitration provisions, claims for theft *of service* will not be subject to arbitration. (See Macke Decl., Ex. A § 13I.) Plaintiffs' claims relate to theft of money, not of service, and therefore are not specifically excluded from arbitration. With regard to the assertion that plaintiffs' claims are excluded from the arbitration provisions because they are purported to be claims brought on behalf of a class of similarly situated subscribers, the fact that the arbitration provisions prohibit class action litigation does not necessarily mean that plaintiffs' class action claims can be

heard in court. In fact, the language, "THERE SHALL BE NO RIGHT FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION OR CONSOLIDATED BASIS" clearly indicates defendant's intent to prohibit both class arbitration and class litigation. (*Id.* § 13E(2).) Therefore, despite plaintiffs' arguments to the contrary, the court concludes that the scope of the arbitration agreement covers plaintiffs' claims. *See Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners Acquisition Corp.,* 312 F.3d 1349, 1358 (11th Cir.2002) (finding narrow interpretation of arbitration agreement proposed by party opposing arbitration "unpersuasive" as "any doubts concerning the scope of arbitrable issues *should be resolved in favor of arbitration"*) (quoting *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25, 103 S.Ct. 927 (emphasis added)).

**C. Unconscionability**

Plaintiffs next argue that the court should not enforce the arbitration agreement as it is unconscionable. Under the FAA, written agreements to arbitrate a dispute arising out of a transaction involving interstate commerce are "valid, irrevocable,. and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, the court may decline to enforce an arbitration agreement if it finds that the agreement should be revoked under a generally applicable principle of contract law. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). In determining whether an arbitration agreement is enforceable, the court may apply state law, provided that the law at issue governs contracts generally and not arbitration agreements specifically. *Perry v. Thomas,* 482 U.S. 483, 492, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

Generally, Georgia law recognizes and protects the freedom of parties to contract. *NEC Techs. v. Nelson,* 267 Ga. 390, 478 S.E.2d 769, 774 (1996). That is true even though they may enter contracts that are unreasonable or which may lead to hardship. *Id.* However, under Georgia law, unconscionability is an affirmative defense to the enforcement of a contract. *Id.* at 771.

Georgia law recognizes two types of unconscionability: "[p]rocedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves." *Id.* In determining procedural unconscionability, Georgia courts look to the following factors: "age, education, intelligence, business acumen and experience of parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of meaningful choice." *Id.* at 771–72. A contract is substantively unconscionable under Georgia law only where it is one that "no sane man not acting under a delusion would make and that no honest man would take advantage of." *Hall v. Fruehauf Corp.,* 179 Ga.App. 362, 346 S.E.2d 582, 583 (1986).

Plaintiffs contend that the arbitration agreement is procedurally unconscionable because: (1) subscribers had no power to negotiate more favorable provisions; (2) the language was intentionally inconspicuous and incomprehensible; (3) the terms were oppressive to subscribers; and (4) the fact that defendant was a monopoly cable service provider left plaintiffs with no meaningful choice. Plaintiffs also assert that the arbitration provisions are substantively unconscionable because they are not commercially reasonable. Plain-

tiffs specifically object to the class action ban.

■ To the extent that plaintiffs' claims of unconscionability challenge the Subscriber Agreement as a whole and not the arbitration provisions specifically, they are not for the court to decide. Under the Supreme Court's decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and the Eleventh Circuit's decision in *Benoay v. Prudential–Bache Secs., Inc.*, 805 F.2d 1437, 1441 (11th Cir.1986), the FAA does not permit a federal court to consider claims challenging the contract as a whole on the basis of adhesion, unconscionability, or lack of mutuality of obligation. Rather, these issues are for an arbitrator to resolve. *See Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 877 (11th Cir.2005). Plaintiffs' claims regarding their lack of bargaining power or meaningful choice go to the making of the Subscriber Agreement itself and not specifically the arbitration provisions. Thus, the court should not decide these issues.

■ The court finds that plaintiffs have not presented any evidence that the arbitration agreement was procedurally unconscionable. There is no indication that plaintiffs have been defrauded or coerced into agreeing to the arbitration provisions contained in the Subscriber Agreement. Furthermore, although plaintiffs argue that the arbitration language was "buried" at the end of a "lengthy" bill stuffer, the arbitration provisions begin on the second page of the six-page document and consist of slightly more than one page of contractual language. Neither the complete document nor the section containing the arbitration provisions is so lengthy as to be unduly burdensome for subscribers to read. Furthermore, the document's title—"Important Notices to Our Custom-

ers: Your Local Cable Company's Policies & Procedures. Notices to Customers Regarding Policies, Complaint Procedures & Dispute Resolution"—indicates that it would contain information of significance to subscribers regarding the terms and conditions of their cable service as well as procedures for addressing problems with the service.

■ With regard to the substantive unconscionability of the arbitration provisions, the court notes that the Eleventh Circuit has upheld arbitration agreements precluding class action relief. *See Jenkins*, 400 F.3d at 877–878; see *also, Caley*, 428 F.3d at 1378. Plaintiffs argue that the effect of defendant's arbitration provisions will be to limit plaintiffs to inconsequential damages and thus permit defendant to avoid liability. Plaintiffs, however, fail to cite to any clear legal precedent in support of their argument that the class action ban is unconscionable. Rather, plaintiffs cite to *Discover Bank v. Superior Court*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100, 1110 (2005), in which the California Supreme Court found that class action waivers in consumer contracts of adhesion in a setting where disputes involved small amounts of damages were unconscionable. *Discover*, however, involved the application of California law. *Id.* ("such waivers are unconscionable *under California law*") (emphasis added). Therefore, the *Discover* court's holding is not determinative in this case. On the other hand, several courts have enforced class action waivers in arbitration agreements despite claims of unconscionability. *See Sherr v. Dell*, 2006 WL 2109436, *6, 2006 U.S. LEXIS 51864, *18–19 (S.D.N.Y. July 28, 2006) (list of cases). Furthermore, this court must take into account the federal policy favoring arbitration as a method for dispute resolution. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74

L.Ed.2d 765. In fact, the simple and expeditious nature of arbitration is precisely what makes it "an attractive vehicle for the resolution of low-value claims." *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC,* 379 F.3d 159, 174 (5th Cir.2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)).

 Plaintiffs have failed to establish that the arbitration provision prohibiting them from proceeding collectively is unconscionable under Georgia law.[4] Defendant, however, cites to both *Caley* and *Jenkins,* two cases in which the Eleventh Circuit upheld such class action waivers under Georgia law. 428 F.3d at 1378, 400 F.3d at 877–78. The court concludes that the terms of the arbitration provision are not unconscionable.

### D. Waiver of Arbitration

 Plaintiffs also argue that defendant, through its actions, has waived its right to demand arbitration. The Eleventh Circuit has recognized that a party seeking arbitration may waive its right to arbitrate by "substantially participat[ing] in litigation to a point inconsistent with an intent to arbitrate." *Morewitz v. W. of Engl. Ship Owners Mut. Prot. & Indem. Ass'n,* 62 F.3d 1356, 1366 (11th Cir.1995).

A party is typically found to have waived its right to arbitrate where it "clearly appeared to forego arbitration, and instead sought to resolve the dispute in court." *Ivax Corp. v. B. Braun of Am.,* 286 F.3d 1309, 1317 (11th Cir.2002); *see also S & H Contractors, Inc. v. A.J. Taft Coal Co.,* 906 F.2d 1507, 1514 (11th Cir.1990) (holding that the party demanding arbitration waived its right to arbitrate by filing, eight months earlier, a complaint against the other party); *Blake Constr. Co. v. U.S.,* 252 F.2d 658, 662 (5th Cir.1958) (finding waiver where the party demanding arbitration had consistently rejected the other party's earlier requests for arbitration). Here, defendant did not initiate this lawsuit and, rather than proceeding to litigate the merits of the dispute, promptly filed the present motion to compel arbitration. The court finds that defendant has not acted inconsistently with an intent to arbitrate this dispute merely by including in its motion to compel arbitration a request for a declaratory ruling on the validity of certain terms of the arbitration agreement. Furthermore, plaintiffs have not been prejudiced by defendant's actions in such a way that the court could determine that defendant waived its right to arbitrate.[5]

The court concludes that plaintiffs' claims are arbitrable. Defendant has established the existence of a valid arbitra-

---

4. Plaintiffs cite to one Georgia case, *Mullis v. Speight Seed Farms,* 234 Ga.App. 27, 505 S.E.2d 818 (1998), in support of their argument that the arbitration provisions were unconscionable due to the element of "surprise" in that "the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* at 820–21 (quoting *A & M Produce Co. v. FMC Corp.,* 135 Cal. App.3d 473, 186 Cal.Rptr. 114, 121–122 (1982)). *Mullis,* however, involved a farmer who purchased seed over the telephone without being aware of certain contractual terms. *Id.* at 821. Unlike the farmer, however, plaintiffs were given copies of the Subscriber Agreement containing the arbitration provisions at the time of installation of their service. Also, when defendant amended the Subscriber Agreement, it notified plaintiffs that the changes would not take effect for thirty days and that plaintiffs could cancel their service if they objected to the changes. Thus, the element of surprise discussed by the court in *Mullis* is not present in plaintiffs' case.

5. Prejudice to the other party is the second prong of the two-part test to determine whether a party has waived its right to arbitrate. See *Ivax Corp.,* 286 F.3d at 1316.

tion agreement between it and each plaintiff. Defendant has also established that plaintiffs' claims fall within the scope of the arbitration provisions. Furthermore, plaintiffs have failed to show that the terms of the arbitration agreement were unconscionable or that defendant waived its right to arbitrate. Therefore, pursuant to this agreement and 9 U.S.C. §§ 2 and 4, the court hereby **GRANTS** defendant's motion to compel arbitration.

### III. Motion to Dismiss

In addition to requesting the court to compel arbitration, defendant's motion also seeks the dismissal of plaintiffs' claims for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs argue that defendant's Rule 12(b)(6) motion is procedurally deficient. Instead, plaintiffs contend that if the court determines that this case is arbitrable, the court should stay the case.

[22] The FAA provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Plaintiffs argue that this section requires the court, upon a finding that plaintiffs' claims are arbitrable, to stay the case rather than dismiss it. However, where all of the issues raised in the action must be submitted to arbitration,

the court may dismiss the action. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 709–10 (4th Cir.2001) ("dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable"). Section 3 of the FAA "was not intended to limit dismissal of a case in the proper circumstances." *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992).

■ All of the issues presented in the case at hand are referable to arbitration. Thus, it would serve no purpose for the court to retain jurisdiction and stay the action. *See Sea–Land Serv., Inc. v. Sea–Land of P.R., Inc.,* 636 F.Supp. 750, 757 (D.P.R.1986) (noting that, pursuant to 9 U.S.C. §§ 9–12, any post-arbitration remedies sought by parties would be limited to a judicial review of the arbitrator's award rather than adjudication of the merits of the controversy). Accordingly, the court **GRANTS** defendant's motion to dismiss.

### IV. Motion for Jury Trial

■ Plaintiffs separately filed a motion demanding a jury trial on the issue of whether there was a valid written arbitration agreement between plaintiffs and defendant. Under the FAA, a district court must compel arbitration once it is satisfied that the parties agreed to arbitrate. 9 U.S.C. § 4. However, if the district court determines that the making of the arbitration agreement is at issue, "the court shall proceed summarily to the trial thereof." *Id.* To warrant a jury trial, the party seeking to avoid arbitration must "unequivocally deny that an agreement to arbitrate was reached and must offer 'some evidence' to substantiate the denial." *Wheat, First Sec., Inc. v. Green,* 993 F.2d 814, 818 (11th Cir.1993) (quoting *Chastain v. Robinson–Humphrey Co.,* 957 F.2d 851, 854 (11th Cir.1992)). The party challenging the arbitration provision must create a genuine

issue of fact by presenting "enough evidence to make the denial colorable." *Chastain,* 957 F.2d at 855.

Plaintiffs' motion for a jury trial is denied because although plaintiffs deny having agreed to arbitrate, they have failed to offer sufficient evidence to substantiate this denial. As discussed above, the court finds that plaintiffs received the 2004 version of the Subscriber Agreement containing the arbitration provisions and assented to the terms.[6] Plaintiffs' declarations that they did not enter into any agreement or that they did not consent to the terms of the arbitration provisions are insufficient to create a genuine issue of material fact as to whether agreements to arbitrate were reached between themselves and de-

fendant. Plaintiffs' motion for a jury trial is hereby **DENIED.**

## V. Conclusion

Based on the foregoing, defendant's motion to compel arbitration and motion to dismiss [7–1] is hereby **GRANTED,** and plaintiffs' motion for trial [22–1] is hereby **DENIED.** Plaintiffs' claims are **DISMISSED without prejudice.**

**6.** Defendant has offered evidence of Work Orders signed by five of the seven plaintiffs acknowledging their receipt of these documents and their assent to be bound by the terms. (*See* Further Macke Decl., Exs. A–E.) As to the remaining two plaintiffs, defendant has presented the declaration of James Macke that defendant mailed the documents containing the arbitration provisions to all of its subscribers in the December 2004 billing cy-

cle along with their invoices. (See Macke Decl. ¶¶ 3–4.) Defendant has further shown that these plaintiffs paid their bills for the month of December, indicating that they received the bills as well as the arbitration provisions. Plaintiff has failed to rebut the presumption that "an item properly mailed was received by the addressee." *Konst,* 71 F.3d at 851.